UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEEPANSHA SINGH,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-09-4108 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 42)** |

        Plaintiff D.S. is a minor. Through her guardian, she filed suit against the United States, alleging that an injury she sustained at a national park was the result of government negligence. Currently pending before the Court is the United States's motion to dismiss or, in the alternative, for summary judgment. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** the government's motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

        In her complaint, D.S. alleges as follows. On March 16, 2008, D.S. was visiting a viewing station at Golden Gate Bridge. *See* Compl. ¶ 7. Upon leaving the station, she entered onto and walked on Battery East Road, which is located in the Presidio, a national park. *See id.* ¶¶ 3, 7. A man was riding his bicycle on the road and crashed into D.S. *See id.* ¶ 7. She suffered an injury as a result. *See id.*

        According to D.S., she sustained the injury as a result of not only the actions of the man riding the bicycle but also the actions or omissions of the United States, which owns and operates

the Presidio. More specifically, and as detailed in her papers opposing the government's motion, D.S. contends that the United States acted wrongfully in that (1) it failed to "stripe" the path – *i.e.*, to employ road markings designating separate lanes or areas for bicyclists and pedestrians, and (2) ) it failed to warn or inadequately warned pedestrians using the road about bicyclists (and vice-versa).

## II.   DISCUSSION

In its motion, the government argues that the tort claim should be dismissed for lack of subject matter jurisdiction. More specifically, the government contends that the claim pled by D.S. falls within the discretionary function exception of the Federal Tort Claims Act ("FTCA"). Alternatively, the government argues that, even if the discretionary function exception is not applicable, it is entitled to summary judgment because the California Recreational Use statute immunizes it from liability.

A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

   1.   Legal Standard

The discretionary function exception to federal liability is well established.

> The FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of their employment. The government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).
>
> The FTCA includes a number of exceptions to this broad waiver of sovereign immunity, including the oft-litigated "discretionary function exception," which provides immunity from suit for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

*Terbush v. United States*, 516 F.3d 1125, 1128-29 (9th Cir. 2008).

"A motion to dismiss on the basis of the discretionary function exception to the FTCA is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Cleveland v. United States*, 546 F. Supp. 2d 732, 752 (N.D. Cal. 2008); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (noting that whether discretionary function exception applies under FTCA is a question of subject matter jurisdiction). For a Rule

12(b)(1) motion, a "court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* Where a court considers only written materials, a plaintiff need only make a *prima facie* showing of subject matter jurisdiction. *See Societe de Conditionnement en Aluminum v. Hunter Engineering Co.*, 655 F.2d 938, 942 (9th Cir. 1981). While a plaintiff bears the burden of establishing that a court has subject matter jurisdiction under the FTCA's general waiver of immunity, the defendant bears the burden of proving the applicability of the discretionary function exception. *See Prescott v. United States*, 959 F.2d 793, 797, 799 (9th Cir. 1992).

There is a two-step analysis used to determine the applicability of the discretionary function exception. First, a court "must determine whether the challenged actions involve an 'element of judgment or choice.' . . . [T]he discretionary element is not met where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* at 1129. If the discretionary element is met, then as the second step, the court "must consider 'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy." *Id.*

With respect to the second step, the Ninth Circuit has noted that the Supreme Court has rejected a bright line between planning and operational functions, stating that it is the nature of the conduct, and not the status of the actor, that governs whether the discretionary function exception applies. *See id.* at 1130. Instead of adopting "a rigid dichotomy between 'planning' and 'operational' decisions and activities," a court applies the following approach:

> "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Thus, "[w]hen established governmental policy, as express or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."

*Id.* at 1130. However, the Ninth Circuit has made a distinction between a decision to adopt safety precautions and the implementation of those precautions – explaining that this distinction focuses on the nature of the decision and not the identity of the decisionmaker. *See id.* at 1133 & n.3.

3

Notably, the focus of the inquiry is not on the agent's actual subjective intent in exercising the discretion conferred by statute or regulation but rather on the nature of the actions taken and whether they are susceptible to a policy analysis. *See id.* In other words, there need not be actual evidence of policy weighing to satisfy the second step. That being said, the Ninth Circuit has clarified there still must be some support in the record that the decisions taken are susceptible to policy analysis in order for the discretionary function exception to apply. *See id.* at 1134. "On this point, the government bears the burden." *Id.* "[I]f all that were required were a bald incantation of 'policy,' then such an approach would swallow the second prong." *Id.* at 1135.

### 2. Step One

There does not appear to be any real dispute that, in the instant case, step one has been satisfied – *i.e.*, that the challenged government actions involve an element of judgment or choice. At the very least, D.S. has not pointed to any federal statute, regulation, or policy that "specifically prescribes a course of action for an employee to follow" with respect to the alleged omission at bar. *Terbush*, 516 F.3d at 1129. Accordingly, the Court's focus is on step two – *i.e.*, whether the "'judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy.'" *Id.*

### 3. Step Two

As indicated above, the basic thrust of D.S.'s case is that the government should be held liable for a failure to warn or take safety precautions, either through the use of road markings (*i.e.*, "striping") to separate bicyclists and pedestrians from one another or through the use of signs to alert bicyclists and/or pedestrians of the presence of the other. Unfortunately, Ninth Circuit cases involving either a failure to warn or to take safety precautions are difficult to reconcile. At times, the Ninth Circuit has concluded such failure was covered by the discretionary function exemption, while other times, it has reached the opposite conclusion. *See Poullos v. United States*, Nos. 05-03690 CRB, C 05-03810 CRB, 2006 U.S. Dist. LEXIS 81075, at *23 n.3 (N.D. Cal. Oct. 26, 2006) (stating that, "[t]o put the matter charitably, the Ninth Circuit's decisions on failures to warn are somewhat tricky to reconcile"); *Lashley v. United States*, No. C 05-03288 WHA, 2006 U.S. Dist.

1  LEXIS 73667, at *10 (N.D. Cal. Sept. 26, 2006) (noting that court has had difficulty reconciling key
2  Ninth Circuit decisions).

3        Nonetheless, some guidance can be found in Ninth Circuit cases. Specifically and of
4  significance to the case at bar, the Ninth Circuit has expressly held that the discretionary function
5  exception is not applicable where the challenged government activity involves safety matters taken
6  (or not) *under an established policy* as opposed to decisions which require the balancing of
7  competing public policy considerations. *See Soldano v. United States*, 453 F.3d 1140, 1146 (9th Cir.
8  2006); *see also Terbush*, 516 F.3d at 1136. In the instant case, D.S. seizes upon the above-stated
9  principle and argues that her case falls under it. More specifically, D.S. contends that (1) there was
10 an established policy to stripe but that it simply was not done and (2) there was an established policy
11 to have warning signs in the spots identified by the government in its papers but the signs were not
12 actually in place on the day of the accident. She does not dispute that the predicate decision to stripe
13 or install signs are covered by the discretionary function exception.

14       a.    <u>Established Policy to Stripe</u>

15       At the hearing on the motion, D.S. conceded that the initial decision of whether or not to
16 stripe is a policy-type decision that is protected by the discretionary function exception. *Cf. Boyd v.*
17 *United States*, 881 F.2d 895, 897 (10th Cir. 1989) (concluding that decision not to zone lake area,
18 *i.e.*, restrict boat entry, was protected by discretionary function exception). D.S. argued, however,
19 that, once the decision to stripe was made, the implementation of that decision – or rather the failure
20 to implement – is not.

21       In the instant case, the parties are in agreement that a decision to stripe Battery East Road
22 (including where the accident at issue took place) was in fact made. *See, e.g.*, Lucas Decl. ¶ 10. The
23 threshold question is whether the decision to stripe was made prior to the accident at issue, *i.e.*,
24 before March 16, 2008. At the hearing, the Court expressed doubt that there was any such evidence.
25 For example, the dates contained in the work order provided by D.S. all post-date the accident at
26 issue. *See* Docket No. 49-2 (NPS000254). However, upon further review, the Court concludes that
27 there is evidence suggesting that the decision was stripe was made before March 16, 2008.
28

More specifically, the Presidio Trails and Bikeways Master Plan & Environmental Assessment, which is dated July 2003 (*i.e.*, some three years before the accident at issue), states: "To address conflicts between cyclists and pedestrians where the regional trails come together and pass under the [Golden Gate] [B]ridge to reach the west walkway of the bridge and the coastal trails, the trail under the bridge will have *separately marked bike lanes and pedestrian lanes as an extension of the Battery East Road trail segment*." Lucas Decl., Ex. A (Master Plan at B-21) (emphasis added).

The Court acknowledges that, in a declaration submitted by the government, Andrea Lucas, the Project Manager for the Golden Gate National Recreation Area of the National Park Service, states that the Master Plan was "*amended* to include striped bicycle lanes on Battery East Road." *Id.* ¶ 10 (emphasis added). Although Ms. Lucas does not expressly state when the amendment took place, she does note that the amendment occurred "following public input." *Id.* While it is possible that the Master Plan was amended after 2003 to include separate lanes for the portion of the trail at issue, it appears that the Master Plan dated July 2003 issued after public input. *See id.*, Ex. A (Master Plan, Appendix B) (discussing public response to Master Plan). It is a fair inference that the Master Plan dated July 2003 *is* the amended document and thus established the policy to stripe the path in question – five years prior to the accident.

The Court emphasizes that it is not, at this juncture, making any determinative finding that the decision to stripe was in fact made in July 2003 with the issuance of the Master Plan. But because there is some evidence suggesting that that was when the decision to stripe took place, the Court cannot conclude that the government has met, at this point, its burden of proving the applicability of the discretionary function exception. *Cf. Prescott*, 959 F.2d at 797, 799 (stating that the government bears the burden of proving the applicability of the exception; adding that "[w]e have declined to affirm a dismissal of an action on the basis of a discretionary function issue when the evidentiary record was insufficient to entitle the government to summary judgment on the question whether the alleged acts of negligence resulted from choices grounded in social, economic or political policy").

The government asserts that, even if there was a decision to stripe, the decision to delay striping until 2008 was itself a policy-type decision protected by the discretionary function

1  exception. According to the government, it waited to stripe because (1) it did not have the funds to
2  carry out the project and because (2) "[i]t made little sense to go to the expense of planning and
3  constructing (regarding, re-paving and striping bicycle lanes) a road based on its intended long term
4  use . . . if Battery East Road would be being used by heavy trucks needing to access to the underside
5  of the Golden Gate Bridge [to do seismic retrofitting] in the relative short term." Lucas Decl. ¶ 12.
6  Thus, government's basic contention is that the decision not to stripe right away involved a
7  weighing of competing policies – in particular, budgetary versus safety considerations.

8        The Court acknowledges that there is Ninth Circuit case law to support the government's
9  position. Most notably, in *National Union Fire Insurance v. United States*, 115 F.3d 1415 (9th Cir.
10 1997), the Ninth Circuit noted that, "where a statute or policy plainly requires the government to
11 balance expense against other desiderata, then considering the cost of greater safety is a
12 discretionary function." *Id.* at 1422. As the government points out, NPS's Management Policies
13 (dated 2006) require consideration of expense. The Management Policies specify that they "do not
14 impose park-specific visitor safety prescriptions" and that "[t]he means by which public safety
15 concerns are to be addressed is left to the discretion of superintendents and other decision -makers at
16 the park level *who must work within the limits of funding and staffing*." Glasgow Decl., Ex. A
17 (Management Policies 2006, Ch. 8.2.5.1) (emphasis added).

18       There are, however, Ninth Circuit cases to the contrary. These cases tend to emphasize that
19 "[b]udgetary constraints underlie virtually all governmental activity"; therefore, if budgetary
20 considerations alone could make a decision a policy-type decision protected by the discretionary
21 function exception, then the exception would "all but swallow the Federal Tort Claims Act." *ARA*
22 *Leisure Servs. v. United States*, 831 F.2d 193, 196 (9th Cir. 1987); *see also Terbush*, 516 F.3d at
23 1134 (noting that "our own case law frowns upon the government relying solely on fiscal policy and
24 budgetary constraints as the 'protected' policy considerations protected by the exception"). That
25 sentiment has been echoed in recent cases which post-date *National Union Fire Insurance*. *See*
26 *Whisnant v. United States*, 400 F.3d 1177, 1184 (9th Cir. 2005) ("declin[ing] to permit the
27 government to use the mere presence of budgetary concerns to shield allegedly negligent conduct
28 from suit under the FTCA" because "'[t]o hold otherwise would permit the discretionary function

7

exception to all but swallow the Federal Tort Claims Act'"); *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002) (noting that "[e]very slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources" and that, "[w]ere we to view inadequate funding alone as sufficient to garner the protection of the discretionary function exception, we would read the rule too narrowly and the exception too broadly").

Thus, the more recent Ninth Circuit case law looks unfavorably upon the government's invocation of budgetary considerations with respect to application of the discretionary function exception. That alone would counsel against granting the government's motion to dismiss for lack of subject matter jurisdiction, particularly when all that D.S. is required to do at this juncture of the proceedings is provide a *prima facie* case of subject matter jurisdiction.

What ultimately leads the Court to reject the government's position, however, is the fact that there is insufficient evidence in the record to support the government's contention that the decision to delay striping was informed by the weighing of competing policies. *See Terbush*, 516 F.3d at 1134 (emphasizing that, although there need not be actual evidence of policy weighing, there still must be some support in the record that the decisions taken are susceptible to policy analysis in order for the discretionary function exception to apply). In fact, in a declaration submitted by the government, Andrea Lucas, the Project Manager for the Golden Gate National Recreation Area of the National Park Service, speaks only to the lack of money as the reason for the delay – not a weighing of budgetary versus safety considerations. Nor does the Lucas declaration indicate that other projects were prioritized over the striping project (*i.e.*, given funding) because of, *e.g.*, more pressing safety or other policy-type considerations. Furthermore, the additional reason asserted - the pendency of the Golden Gate Bridge retrofit work in the area - made it impractical to stripe immediately because the seismic retrofitting work would have interfered with and required a second round of striping. *See* Lucas Decl. 12. These concerns to not elevate the timing decision to a policy level which transcends garden variety budgetary constraints described in *ARA Leisure Services* and its progeny.

1    In sum, in the context of a motion under Rule 12(b)(1), the Court finds D.S. has established a *prima facie* case that there was an established policy to stripe but simply a failure to implement the policy which is not covered by the discretionary function exception.

b. <u>Established Policy to Have Warning Signs</u>

As noted above, with respect to the warnings signs, D.S's argument is that there was an established policy to have warning signs in the spots identified by the government in its papers, but the signs were not actually in place on the day of the accident.[1] *See* Singh Decl. ¶ 7 (claiming that two of the three signs identified by the government were not present). Because D.S. is simply making the argument that the government did not live up to its established policy to have signs in the locations identified by the government, then that is an issue outside the scope of the discretionary function exception. *See Soldano*, 453 F.3d at 1146; *see also Terbush*, 516 F.3d at 1136. Because D.S.'s father has submitted a declaration stating that the signs were not present on the day of the accident, whereas the government has presented photographic evidence that the signs were up both before and after the accident, *see* Lucas Decl. ¶ 11; Lucas Rely Decl. ¶¶ 2-7, there is a factual dispute that cannot be resolved in favor the government under Rule 12(b)(1).

B. <u>Motion for Summary Judgment</u>

The government argues that, even if the discretionary function exception is not applicable, there is still a problem with D.S.'s case – *i.e.*, that the government is immunized from liability by the California Recreational Use statute. California Civil Code § 846 provides in relevant part as follows:

> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the

---

[1] D.S. does not appear to be making an argument that any decision on warning signs was not a policy decision to begin with and therefore not protected by the discretionary function exception. *See, e.g.*, *Boyd*, 881 F.2d at 898 (stating that "[a]n alleged failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned"). Even if she had, although the case law appears mixed, the Ninth Circuit has noted that "[m]ost of our cases in the post-*Gaubert*[] era have held that fulfilling the NPS's decision to warn the public of hazards in the national parks entails the kind of policy weighing decision protected from judicial review by the discretionary function exception." *Terbush*, 516 F.3d at 1135; *see also id.* at 1139 (stating that "*Childers*, *Valdez*, and *Blackburn* all protect from judicial review NPS decisions determining the scope of hazards and the appropriate means to alert the public to the danger they pose").

9

> premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.
>
> . . . .
>
> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.
>
> This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

Cal. Civ. Code § 846. In short, under § 846, a landowner may not be held liable for an injury sustained by a permittee on its property unless, *e.g.*, it willfully or maliciously failed to guard or warn against a dangerous condition.

In the instant case, there is no dispute by the parties that § 846 is applicable to the government where it is a landowner. *See also Simpson v. United States*, 652 F.2d 831, 833 (9th Cir. 1981) (noting that "the Federal Tort Claims Act makes the United States liable for negligence in the same manner and to the same extent as a private individual would be in similar circumstances" and, "[s]ince California Civil Code § 846 doubtless applies to private persons, it must, therefore, also apply in the same way to the United States"). Nor is there any dispute that the sole question in the instant case is whether the government willfully or maliciously failed to guard or warn against a dangerous condition.

In its motion, the government's makes two argument regarding the issue of willful or malicious conduct: that (1) D.S. has failed to adequately plead that the government acted willfully or maliciously and (2) even if D.S. had made sufficient allegations, the government is entitled to

10

1  summary judgment because there is no genuine dispute of material fact that the government did not
2  act willfully or maliciously.  Because D.S.'s position on willfulness/malice is clear based on the
3  papers, the Court focuses on the second argument.

4  Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if
5  the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
6  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
7  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine
8  only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See*
9  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of
10 evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for
11 the [nonmoving party]." *Id.* at 252.  At the summary judgment stage, evidence must be viewed in
12 the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the
13 nonmovant's favor. *See id.* at 255.  Where the plaintiff has the ultimate burden of proof, the
14 defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's
15 failure "to make a showing sufficient to establish the existence of an element essential to [the
16 plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

17 In the instant case, the question for the Court on summary judgment is whether a reasonable
18 jury could find, based on the evidence of record, that the government's failure to act was willful or
19 malicious.  California courts have indicated that, to establish willfulness or malice under § 846, a
20 plaintiff must establish "'three essential elements'" – *i.e.*, "'[the defendant's] actual or constructive
21 knowledge of the peril to be apprehended, (2) [the defendant's] actual or constructive knowledge
22 that injury is a probable, as opposed to a possible, result of the danger, and (3) [the defendant's]
23 conscious failure to act to avoid the peril." *New v. Consol. Rock Prods. Co.*, 171 Cal. App. 3d 681,
24 689-90 (1985); *see also Mattice v. United States*, DOI, 969 F.2d 818, 822 (9th Cir. 1992) (same);
25 *Manuel v. Pacific Gas & Electric Co.*, 173 Cal. App. 4th 927, 940 (2009) (same).  In its summary
26 judgment motion, the government basically argues that no reasonable juror could find that it had
27 acted willfully or maliciously because there is no evidence that (1) it had actual or constructive
28 knowledge of the alleged dangerous condition; (2) it had actual or constructive knowledge that

injury was probable; and (3) it consciously failed to act to avoid the alleged dangerous condition. Each of these issues is addressed below.

### 1. Knowledge of Dangerous Condition

The government contends that it had no knowledge – actual or constructive – of the alleged dangerous condition because there were no prior accidents involving a bicyclist and pedestrian on Battery East Road. The lack of prior accidents, however, is not dispositive. Just because no prior accidents have occurred does not mean that a dangerous condition cannot still be obvious. *See Termini v. United States*, 963 F.2d 1264, 1267 (9th Cir. 1992) (noting that "[c]ommon sense dictates that a precipice at the end of a road constitutes a peril to be apprehended").

A more important issue with respect to the knowledge factor is whether the government must have knowledge of the *specific* hazard or risk or just knowledge of the hazard or risk *generally*. D.S. seems to be arguing that all that is necessary is the latter, asserting that the government "was aware of the concerns stemming from fail[ure] to separate bicyclists and pedestrians for many years." Opp'n at 9. But it is not clear from the case law that that position is correct.

In *Mattice v. United States*, *DOI*, 969 F.2d 818 (9th Cir. 1992), the plaintiff was injured when she accidentally drove off of a winding road. The plaintiff argued that the government knew or should have known that a danger existed because of nine accidents that had taken place on the road in ten years. The Ninth Circuit disagreed. It explained:

> In *Spires v. United States*, 805 F.2d 832 (9th Cir. 1986), the plaintiff fell into a ditch caused by flow from the storm sewer. We held that the plaintiff did not establish that the government had actual or constructive knowledge of the ditch. It was insufficient to show that the government employees knew that occasional ditches occur. Similarly here, the nine accidents on Enderts Beach Road do not establish that the government should have known that the curve by the overlook was dangerous. None of the accidents occurred near the overlook. Moreover, Mattice has not shown any pattern at all from the accidents other than that they were on Enderts Beach Road. One of the accidents occurred where the road was level, one occurred because of poor brakes, two involved drinking, one involved a distracted driver, and four involved vehicles travelling at excess speeds. Apparently, none of the accidents involved vehicles breaking through the guardrail or resulted in serious injury.

*Id.* at 823.

Thus, based on *Mattice*, it could be argued that the government had to have knowledge (actual or constructive) that there was a hazard or risk at the *specific place* where D.S. was injured on Battery East Road. The fact that the government knew that there was a general risk of use conflict between bicyclists and pedestrians in the Presidio (as reflected, *e.g.*, by the Master Plan, *see* Lucas Decl., Ex. A (Master Plan at 7, B-5 to -6)) would not be sufficient.

Of course, that does not answer the question of whether, in this case, the government should have known that there was a hazard or risk at the specific place where D.S. was injured on Battery East Road – *i.e.*, that the hazard or risk was obvious. As D.S. notes, the fact that the government made efforts to put up warning signs near the area where she was injured suggests that the hazard or risk was obvious. *See Poullos*, 2006 U.S. Dist. LEXIS 81075, at *33 (concluding that "a reasonable trier of fact could find that the Park Service had actual or constructive knowledge of the peril posed by the State Belt tracks" because "[t]he Park Service itself took actions that indicate an awareness of the perilous tracks, such as paving over the 'flangeways' to reduce 'hazards to pedestrians and bicyclists,' and installing warning signs at each end of the promenade"). In the context of summary judgment, the inferences must be drawn in Plaintiff's favor.

2. Knowledge of Probability of Injury

Again, the fact that the government put up warning signs near the area where D.S. was injured suggests that it had knowledge that there was a substantial likelihood of injury as a result of the hazard or risk. *See id.* at *34-35 (noting that "the Park Service's own actions indicate their awareness about the likelihood of injury; after all, the government paved the 'flangeways' and posted warning signs precisely to avoid cycling accidents on the promenade"). That the Park Service also found in the Master Plan the need to stripe the path also supports the inference that the government knew of the probability of injury.

The government's suggestion that the lack of prior accidents is once again dispositive on this question is without merit. Indeed, the Ninth Circuit has specifically noted: "The California courts have frequently rejected such reasoning, noting that 'the matter of probability is not to be assessed solely by the number of prior accidents, which adventitiously may have been few, *but by all the circumstances*.'" *Termini*, 963 F.2d at 1269 (emphasis added).

13

1    The government argues still that the second factor has not been met because the government
2 cannot be said to have knowledge that injury is probable where the hazard or risk is obvious to
3 everyone, and not a hidden peril. In *Mattice*, the Ninth Circuit did note that "[t]he cases in which we
4 have upheld a claim of willful misconduct under California law have all involved a hidden peril."
5 *Mattice*, 969 F.2d at 822. But that does not necessarily mean that there can never be willful or
6 malicious conduct where the peril is obvious.[2] As Judge Seeborg noted in *Niva v. United States*, No.
7 5:03-cv-0908 RS, 2004 U.S. Dist. LEXIS 20392 (N.D. Cal. Oct. 1, 2004), *rev'd on other grounds by*
8 245 Fed. Appx. 621 (9th Cir. 2007), "no such requirement that a peril be 'hidden' exists in the
9 statute." *Id.* at *22. Therefore, this element cannot be decided in the government's favor as a matter
10 of law. It ultimately turns on whether there was a conscious failure to act.

11    3.    Conscious Failure to Act

12    On this final factor, the government argues that there is no conscious failure to act where the
13 government has in fact provided some warning of the hazard or risk.

14    The government's argument on this point has force. A number of cases have found that
15 where the government provided warning of the risk, there was no conscious failure to act (assuming
16 the adequacy of the warning). *See Mattice*, 969 F.2d at 823 (noting that "Mattice has not offered
17 evidence to establish that the government consciously failed to act to avoid the danger" and that the
18 undisputed evidence showed that the government took some action to warn or protect; that the
19 government could have done additional things would at most constitute negligence); *Cleveland*, 546
20 F. Supp. 2d at 774 (noting that "there is no evidence that the Forest Service 'consciously
21 disregarded' the necessity to protect the public" and that instead "the evidence shows that the Forest
22 Service took a number of actions" to warn or protect); *Alden v. United States*, No. C-92-1052 SBA,
23 1993 U.S. Dist. LEXIS 8810, at *7-8 (N.D. Cal. June 9, 1993) (noting that "the fact that a defendant

---

[2] The Court notes that, in her papers, D.S. challenges the obviousness of the danger here, relying on the declaration of her father. But Deep Singh's declaration is not helpful on the obviousness point. Mr. Singh seems to be arguing that the danger of bicyclists was not obvious because, even though he saw bicyclists on the road heading toward the bridge, he did not see any bicyclists coming in the opposite direction. *See* Singh Decl. ¶ 8. This argument strains credulity. Once Mr. Singh saw bicyclists on the road, he should have known that there would be bicyclists on the road no matter which direction they might be traveling.

1  did not take all possible measures to protect the public does not mean that the defendant acted
2  willfully and maliciously"; adding that "[p]laintiff's have offered no evidence which tends to show
3  that the government intentionally acted in disregard of the peril, rather they criticize the actions
4  taken").

5        To be sure, there may be circumstances where the attempt at warning may not negate a claim
6  of conscious failure to act. *See Poullos*, 2006 U.S. Dist. LEXIS 81075, at *35-38 (concluding that a
7  reasonable jury could find that there was a conscious failure to act, even where there was evidence
8  that the government took affirmative steps to protect cyclists, because there was also evidence that
9  the government "took steps that actually undermined their ability to help cyclists avoid the peril").
10 But Plaintiff provides no evidence negating the sufficiency of the government's attempt to establish
11 a warning and thus fails to demonstrate a conscious failure here.

12       As to the alleged lack of warning signs on the date of the incident, even assuming that Mr.
13 Singh is correct in testifying that signs were not posted at the locations at issue, there is no evidence
14 that that failure was the result of a conscious failure to act instead of mere negligence. As noted
15 above, the government has provided evidence that the warning signs were in place before and after
16 the accident. *See* Lucas Decl. ¶ 11; Lucas Reply Decl. ¶¶ 2-7. If, as D.S. speculates in her
17 opposition brief, the signs were being fixed, reinstalled, or replaced, *see* Opp'n at 7-8, that would
18 suggest mere negligence rather than a conscious failure to act, particularly in the absence of any
19 prior accidents on Battery East Road. D.S. has not offered any evidence that, *e.g.*, the signs were not
20 in place for weeks on end, from which a jury might be able to infer a conscious failure to act.

21       As for the failure to stripe, there is no evidence indicating that this was a conscious failure to
22 act rather than mere negligence. The government has provided reasons as to why it did not stripe
23 until shortly after the accident – *i.e.*, it lacked funds to do so and it was impractical to do so when
24 seismic retrofitting still needed to be done (which would require a second round of striping). *See*
25 Lucas Decl. ¶ 12. Moreover, even though the government did not stripe the path, it did post
26 warnings signs. D.S. has not challenged the adequacy of those signs; she has not argued that the
27 signs did not give adequate warning of the danger. (Rather, as noted above, her only claim is that
28 the signs were not actually on display on the day of the accident at issue.) Given these

circumstances, combined with the absence of any prior accidents on Battery East Road, D.S. has failed to establish a genuine issue of fact as to whether the government's failure to stripe constitutes a conscious failure to act. The government is therefore entitled to summary judgment based on D.S. failure to establish this element.

### III. CONCLUSION

Accordingly, the Court grants the government's motion for summary judgment on the basis that there is no evidence based on which a reasonable jury could find that the United States acted willfully or maliciously in failing to stripe or in failing to post signs on the day of the accident at issue. The government is thus entitled to judgment in light of California Civil Code § 846.

This order disposes of Docket No. 42.

IT IS SO ORDERED.

Dated: June 10, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge